The Honorable Shane Broadway State Senator 201 Southeast Second Street Bryant, AR 72022
Dear Senator Broadway:
I am writing in response to your request for an opinion regarding Act 101 of 1999, the Public Access to Automatic External Defibrillation Act of 1999 ("the Act"), which is codified at A.C.A. § 17-95-601 et seq. (Repl. 2002). You have asked me to assume that an individual or entity who acquires an automated external defibrillator complies with the requirements of A.C.A. § 17-95-604 and, acting in good faith and without compensation, renders emergency care or treatment using a defibrillator.[1] You have then asked the following questions:
 1. If said person or entity complied with the [requirements of A.C.A. § 17-95-604], would said person or entity be immune from civil liability for personal injury assuming that there was not gross negligence or willful or wanton misconduct on the part of the person rendering the emergency care?
 2. Under the guidelines set forth in Act 101 of 1999, would a physician or medical authority involved with the placement of the automated external defibrillator or the person or entity that provides CPR and automated external defibrillator course training and the person or entity that provides the site where the automated external defibrillator is placed, be immune from civil liability?
RESPONSE
It is my opinion that the answer to these questions is "yes," if it is also assumed that the person or entity under your first question and the physician or other person listed in your second question acted as "ordinary, reasonably prudent person[s] would have acted under the same or similar circumstances." A.C.A. § 17-95-605(a).
Section 17-95-605, entitled "Automated external defibrillator use and tort immunity," provides as follows:
 (a) Any person or entity who in good faith and without compensation renders emergency care or treatment by the use of an automated external defibrillator is immune from civil liability for any personal injury as a result of the care or treatment or as a result of any act or failure to act in providing or arranging further medical treatment, if the person acts as an ordinary, reasonably prudent person would have acted under the same or similar circumstances.
 (b) The immunity from civil liability for any personal injury under subsection (a) of this section includes:
 (1) The physician or medical authority who is involved with automated external defibrillator site placement;
 (2) The person or entity who provides the CPR and automated external defibrillator training; and
 (3) The person or entity responsible for the site where the automated external defibrillator is located.
 (c) The immunity from civil liability under subsection (a) of this section does not apply if the personal injury results from the gross negligence or willful or wanton misconduct of the person rendering the emergency care.
 (d) The requirements of § 17-95-604 do not apply to any individual using an automated external defibrillator in an emergency setting if that individual is acting as a Good Samaritan pursuant to the provisions of either § 17-95-101 or § 17-95-106.
A.C.A. § 17-95-605 (Supp. 2002) (emphasis added).
Because your questions assume that the requirements of A.C.A. § 17-95-604 have been met and that there is no personal injury resulting from gross negligence or willful or wanton misconduct of the person rendering the emergency care (see A.C.A. § 17-95-605(c), supra), it appears that the only remaining element for asserting the statutory immunity is the requirement under A.C.A. § 17-95-605(a) that the "person" must act "as an ordinary, reasonably prudent person would have acted under the same or similar circumstances." A.C.A. § 17-95-605(a). The term "person" is defined in A.C.A. § 17-95-603(7) as "any individual, partnership, association, corporation, or any group of organized persons whether incorporated or not[.]" I conclude from this definition that the standard of care under A.C.A. § 17-95-605(a) must be met by both an individual and/or an entity that acquires an automated external defibrillator. It is opinion, additionally, that this so-called "reasonable man" standard of care must be met by the physician and the other individuals or entities listed in A.C.A. § 17-95-605(b). Subsection (b) states that "[t]he immunity . . . under subsection (a) of this section includes [the listed persons or entities]." I interpret this to mean that those listed must also meet the standard of care under (a) to be entitled to immunity.
Whether the standard of care is met under the circumstances by any of those listed in 17-95-605(b) presents questions of fact that cannot be resolved in an opinion from this office. Consequently, I cannot offer a definitive opinion in response to the questions you have posed. The foregoing will hopefully be of assistance, however, in addressing particular factual scenarios.
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:EAW/cyh
[1] Section 17-95-604 provides in full as follows:
 (a) In order to ensure the public health and safety, a person or entity who acquires an automated external defibrillator shall ensure that:
 (1) Expected automated external defibrillator users complete a knowledge and skills course in CPR and automated external defibrillator use based upon current American Heart Association scientific guidelines, standards, and recommendations for providing CPR and the use of automated external defibrillators as published in American Heart Association, American Red Cross, or equivalent course materials;
 (2) The defibrillator is maintained and tested according to the manufacturer's operational guidelines and instructions;
 (3) There is the involvement of a physician or medical authority to the site's automated external defibrillator program to ensure compliance with requirements for training, notification, and maintenance; and
 (4) Any person who renders emergency care or treatment on a person in cardiac arrest by using an automated external defibrillator activates the emergency medical services system as soon as possible, and reports any clinical use of the automated external defibrillator to the physician or medical authority as well as to emergency medical services providers.
 (b) Any person or entity who acquires an automated external defibrillator shall notify an agent of emergency communications, 911, or vehicle dispatch center of the existence, location, and type of automated external defibrillator.
Although you have not stated that notice of the device was also provided in accordance with subsection (b), I assume that this is the case as you have asked me to assume that the individual or entity complied with the requirements set by law.